UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JEREMY WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 6:19-cv-01243-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION[1]

Plaintiff Jeremy Ward ("Ward") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Ward timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED,** and this action **REMANDED**.

### I. Factual and Procedural History

Ward protectively filed an application for a period of disability and DIB on July 22, 2016, alleging disability beginning on June 16, 2016. (Tr. 11, 393). The Commissioner initially denied Ward's claim, (tr. 330-34), and Ward requested a hearing before an ALJ, (tr. 337-38). At the January 30, 2018 hearing, Ward amended his onset date to April 17, 2017. (Tr. 11, 290). The ALJ

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 11).

denied Ward's claim on May 29, 2018. (Tr. 8-20). Ward sought review by the Appeals Council, but it denied his request for review on June 6, 2019. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On August 3, 2019, Ward initiated this action. (Doc. 1).

Ward was forty-six years old on the date of the hearing. (*See, e.g.,* tr. 45). Ward previously worked as a delivery driver/auto parts clerk and store manager. (Tr. 27, 38-40, 55).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*,

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Ward met the insured status requirements of the Social Security Act through December 31, 2020, and had not engaged in substantial gainful activity from April 17, 2017, the amended alleged onset date of his disability. (Tr. 13). At Step Two, the ALJ found Ward has the following severe impairments: multilevel degenerative disc disease, residual effects of cervical fusion surgery, type II diabetes, and peripheral neuropathy. (*Id.*). At Step Three, the ALJ found Ward does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14).

Before proceeding to Step Four, the ALJ determined Ward's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Ward has the RFC

      to perform light unskilled work as defined in 20 CFR 404.1567(b) except he is limited to occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; and occasional balancing, kneeling, stooping, crouching, or crawling.  In addition, he would be expected to be off-task 10% of the workday and be expected to miss one day per month on a consistent basis, after any initial probationary or training period would be completed.

(Tr. 14).  At Step Four, the ALJ determined Ward could perform his relevant past work as a delivery driver/auto parts clerk and store manager.  (Tr. 15-16).  Therefore, the ALJ determined Ward had not been under a disability and denied his claim. (Tr. 16).

### V. Analysis[4]

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

In his brief, Ward raises two issues: (1) the Appeals Council failed to adequately consider evidence Ward submitted to it following the hearing; and (2) the ALJ inappropriately rejected Ward's pain testimony.  Because the first of these requires remand, and the Commissioner must evaluate Ward's testimony afresh in light of the new evidence, the undersigned declines to address the second.[5]

---

[4] Ward's brief was filed late; after filing it, he moved for an extension of time.  (Doc. 13). That motion is **GRANTED**, and the undersigned has fully considered Ward's brief in this analysis section.

[5] Ward also briefly states "the ALJ erred in not considering [his] obesity at all."  (Doc. 12 at 19-20).  To the extent this is a separate argument from the ALJ's consideration of Ward's

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. 404.900(b)). The Appeals Council must review a case if it receives additional evidence that is new, material, and chronologically relevant. 20 C.F.R. § 404.970(a)(5); *Ingram*, 496 F.3d at 1261. "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to . . . *de novo* review," and an erroneous failure to consider such evidence warrants remand. *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). New evidence is noncumulative evidence that was not previously presented to the ALJ, and that evidence is material when "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." *Foster v. Colvin*, No. 12-CV-4038-VEH, 2014 WL 1338095, at *4 (N.D. Ala. Mar. 28, 2014) (citing 20 C.F.R. § 404.970(b)). Even records that postdate the ALJ's decision may be chronologically relevant when they assess the conditions that existed prior to the decision and there is no evidence of deterioration. *Washington*, 806 F.3d at 1322.

Here, the Appeals Council rejected all of the evidence Ward submitted. Some of the evidence it rejected because it was not material: records from Jasper Family Practice dated June 29, 2015 to May 7, 2018; records from Southern Orthopedic Sports Medicine dated January 15, 2018 to May 6, 2018; and records from Pain Management Services dated February 6, 2018 to May 1, 2018. (Tr. 2). It rejected other evidence because it did not relate to the period at issue: evidence

---

subjective testimony, the Commissioner should also consider this on remand.

from Jasper Family Practice dated July 16, 2018 to February 21, 2019; records from Southern Orthopedic Sports Medicine dated September 5, 2018 to January 28, 2019; records from Walker Baptist Medical Center dated September 16, 2018; records from Pain Management Services dated July 17, 2018; records from Cardiology, PC dated June 4, 2018; a vocational evaluation from Howell Consulting, LLC, dated July 17, 2018; and a Functional Capacity Evaluation ("FCE") Report from D. Bledsoe, OTR/L. Cir. dated June 1, 2018.  (*Id.*).

The Appeals Council erroneously assessed at least some of this evidence.  Initially, the Appeals Council does not appear to have accounted for all of the evidence Ward submitted.  The Appeals Council breaks down the Southern Orthopedic Sports Medicine records into (1) an immaterial tranche from January 15, 2018 to May 6, 2018 and (2) a tranche that is not chronologically relevant from September 5, 2018 to January 28, 2019. (Tr. 2).  However, between these two periods are records dated May 9, 2018, May 16, 2018, and July 11, 2018.  (Tr. 61-70). While the Appeals Council may have made a typographical error in pointing to the end date of the records, there is no way for the undersigned to tell that is the case.

This matters because the evidence from at least one of those visits is chronologically relevant and material.  Beginning July 27, 2016, Dr. Mark Prevost of Southern Orthopedic Sports Medicine had treated Ward at length for a variety of spinal issues stemming from what Ward indicated was a June 16, 2016 workplace injury.  (*See* tr. 745).  At various points during this treatment, Dr. Prevost had observed MRIs of Ward's spine showing some degenerative changes, but no observed nerve compression.  (*See e.g.,* tr. 662, 655).  In his decision, the ALJ relied in part on Dr. Prevost's notes regarding Ward's cervical spine to discredit Ward's testimony of disabling chronic back pain.  (Tr. 14-15) (citing tr. 743).

Ward saw Dr. Prevost at all three of the visits the Appeals Council failed to include within the date ranges of evidence it identified. At the May 9, 2018 visit, Dr. Prevost observed that Ward's last CT and MRI scans showed moderate stenosis at the C5-6 level, with "very poor fusion" at C6-7, (tr. 69), which Ward had previously undergone in January 2016, (tr. 662, 745). Dr. Prevost proposed an anterior posterior decompression fusion at C5-6 and discussed the risks and benefits of the surgery with Ward. (*Id.*). Ward made an appointment to come in the next week to make a decision. (*Id.*). At that visit, on May 16, 2018, Dr. Prevost recorded Ward's statement his neck and extremity pain had "progressively worsened over the timeframe that we've been managing this care . . . ." (Tr. 65). Ward indicated at that visit he wished to proceed with surgery. (Tr. 66).

At Ward's July 11, 2018 visit, Dr. Prevost explicitly connected Ward's surgery to the injury he suffered on June 16, 2016. (Tr. 62). Specifically, Dr. Prevost stated:

> I believe the reason for his surgery will be based on the level at C5-C6 above his fusion where he has significant degenerative changes and nerve compression. However there is a small possibility that the C6-7 level was not fused and while we were in the surgery we will evaluate the C6-7 level as well . . . We'll [sic] also based on his mechanism of injury and his complaints thereafter I believe this is medically related to the injury that he sustained on 6/16/2016.

(Tr. 62).

Examining this evidence, while the July 11, 2018 visit postdates the ALJ's decision by a little over a week, it is nevertheless chronologically relevant. Dr. Prevost connected the reason for the surgery to both a condition that existed prior to Ward's amended alleged onset date and the symptoms he experienced during the period of time he claimed to suffer from disabling pain. This is precisely the situation in *Washington*. The new evidence supports Ward's conditions existed prior to the ALJ's decision, and that any evidence of deterioration happened during the relevant time period (as Dr. Prevost memorialized at the May 16, 2018 visit—also prior to the ALJ's

decision). Accordingly, even if evidence from the July 11, 2018 visit postdated the ALJ's decision, it was chronologically relevant.

Similarly, the evidence is material because it goes directly to the ALJ's reasons for discrediting Ward's testimony. As far as medical evidence, the ALJ relied in large part on Ward's relatively normal examination on June 2016; he found that, while Ward had complained of chronic back pain since June 2016, his findings at that time were relatively normal: Dr. Eugene Tai found Ward could lie down and sit up without much difficulty, he ambulated slowly but normally, his straight leg raise was negative, and his bilateral range of motion in all his extremities was normal. (Tr. 15) (citing tr. 621). The evidence submitted to the Appeals Council indicates Ward's condition worsened substantially over the time period at issue. Furthermore, Dr. Prevost's notes from Ward's July 11, 2018 visit undermine another rationale for the ALJ's rejection of Ward's pain testimony: that imaging and other tests revealed largely minor or moderate issues. (Tr. 15). The ALJ pointed to prior MRIs showing moderate changes and no significant nerve involvement, (tr. 15) (citing tr. 667, 678, 743), but Dr. Prevost's July 11, 2018 note reveals "significant degenerative changes and nerve compression." (Tr. 62).

The Commissioner makes a cursory effort to argue the treatment records from July 16, 2018 to February 21, 2019 are not chronologically relevant, (doc. 14 at 15), but does not make the same argument for Dr. Prevost's records. Instead, the Commissioner argues Ward cannot rely on Dr. Prevost's statement regarding his June 2016 injury to support any particular functional limitation. (Doc. 14 at 15). Whether this statement would support additional limitations, as noted above, Dr. Prevost's statement is directly at odds with the ALJ's rationale for rejecting Ward's subjective complaints. There is a reasonable probability that, on remand, the ALJ would view Ward's testimony differently, which is all that matters. *Hyde*, 823 F.2d at 459. The Commissioner

argues other evidence does not support further limitations, (tr. 13-14), but it is the Commissioner who must weigh this evidence, not the court.  The Commissioner also points to a post-surgical follow-up on January 28, 2019, at which Dr. Prevost noted and concurred with the FCE's conclusion that Ward could return to light activity—a less stringent standard than the ALJ's RFC of light activity with further reductions.  (Doc. 14) (citing tr. 47).  However, the level of activity Ward could tolerate after surgery is of arguable relevance to whether, on the date of the ALJ's decision, Ward had been disabled for any or all of the period following his alleged onset date.

On remand, the Commissioner should assess the evidence the Appeals Council appears to have either overlooked or erroneously rejected.  To the extent this evidence implicates Ward's subjective complaints, the Commissioner should provide a new assessment of those complaints, including, if applicable, Ward's obesity.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Ward's claim for disability insurance benefits is **REVERSED** and this action **REMANDED**.

DONE this 23rd day of March, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE